# EXHIBIT C

Docusign Envelope ID: BDFCC95E-1309-48C7-B837-1F31CA14673E

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANGELA ROBERTS,<br>Plaintiff,<br>- against -<br>UNLOCK PARTNERSHIP SOLUTIONS AO1, INC., CLEAR EDGE TITLE INC., ABC INC 1 – 10, AND JOHN DOE 1-10,<br>Defendants. | Case No.: 24-cv-: 23-cv-4669 |

**DECLARATION OF JAMES RICCITELLI ON BEHALF OF UNLOCK PARTNERSHIP SOLUTIONS AO1 INC. IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

I, JAMES RICCITELLI, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that I am over eighteen years of age and that the following are true and correct:

1. I am the Chief Executive Officer (CEO) of Unlock Partnership Solutions AOI Inc. ("Unlock"). As CEO, I am authorized to execute this declaration on behalf of Unlock.

2. I submit this declaration in connection with the Motion to Compel Arbitration filed by Unlock.

3. In preparing this declaration, I have reviewed Unlock's available business records concerning the facts set forth herein. The records I have reviewed

were created, kept, and maintained as part of Unlock's regularly conducted activities in the normal course of its business.

**DESCRIPTION OF FSEA**

4. As its primary business, Unlock offers an arrangement known as a Forward Sale and Exchange Agreement ("FSEA").

5. A true and accurate copy of the FSEA between Unlock and Plaintiff Angela Roberts ("Plaintiff") is attached to Unlock's Motion to Compel Arbitration [Dkt. No. 26] at Exhibit B.

6. The FSEA is an agreement by which an owner of property is paid a certain amount in exchange for a right to receive a specified percentage interest in the value of the property. (Ex. B [FSEA]).

7. Unlock considers each FSEA to be an investment in that property. Any return on its investment depends on the property's future value, the time at which the owner choses to exit the investment, up to a maximum of ten years, and the amount of debt that may be superior to Unlock's lien. If the property's value depreciates, stays the same, or appreciates at a slower rate than inflation, Unlock realizes far less return on its investment – and potentially no benefit at all.

8. Unlock receives no conveyance or title for its interest in the property. As Unlock is not able to exercise any control over the property, it must trust that the owner will protect the property and, in turn, Unlock's investment.

Docusign Envelope ID: BDFCC95E-1309-48C7-B837-1F31CA14673E

9. In several ways, the FSEA is quite flexible. For one, the amount paid to the owner, referred to as the "Investment Payment," can vary.

10. In 2021, when Plaintiff signed her FSEA, the highest Investment Payment that Unlock offered was an Investment Payment equal to 43.75% of the property's current value (known as the "Investment Percentage"). In that instance, Unlock would have a right to receive up to a 70% interest in the future value (known as the "Unlock Percentage") subject to an Annualized Cost Limit that caps the cost of the product.

11. In connection with each FSEA, Unlock sends a product guide outlining the details of its financial product. A true and accurate copy of the product guide applicable for 2021, when Plaintiff signed her FSEA, is attached hereto as Exhibit 1.

12. Unlock does not require that the owner use the property as her primary residence. FSEAs are available for primary residences, second homes, and even rental properties.

13. Even if the property was originally identified as a primary residence, owners may use the property as a second home or even a rental property subject to potential limitations on the amount of financing that can be secured by the property.

14. Prior to the FSEA's expiration or a "Settlement Event," the property owner has the option to buy out Unlock's interest.

15. The FSEA defines four "Settlement Events" through which Unlock realizes a return on its investment in the Property:

> Permitted Sale: Plaintiff is permitted to sell the Property at any time prior to the expiration of the 10-year period, assuming certain conditions have been met, such as the sale being at arm's length. (Ex. B [FSEA] at § 2.1). If notified of a permitted sale, Unlock has two options under the FSEA. Unlock can elect to "make an offer in writing to purchase the Property from [Plaintiff] on the same terms and conditions as the proposed offer from the third-party buyer." (*Id.* at § 2.1(i)). Alternatively, Unlock can exercise its right to a "Conversion" of its percentage interest in the Property, entitling it to a percentage of proceeds of such sale. (*Id.* at § 2.2). However, notwithstanding Unlock's options, Plaintiff has the option to "settle" the Unlock Agreement by tendering a payment calculated based on the value of the Property and Unlock's percentage ownership interest. (*Id.* at § 2.4).
>
> Owner Buyout: Plaintiff is permitted to buy out Unlock's interest in the Property at any time prior to the expiration of the 10-year period, assuming certain conditions have been met, such as an independent appraisal being conducted. (*Id.* at § 3.1). Under those circumstances, the "Settlement Payment" would be calculated based on the value of the Property at the time of the buyout and Unlock's percentage ownership interest, and further subject to the annualized cost limit. (*Id.*)
>
> Death of Last Surviving Signatory: Upon the death of the last surviving person to sign the FSEA, the estate is required to settle with Unlock through essentially the same methods for the "Permitted Sale" and "Owner Buyout" Settlement Events.
>
> Expiration of the Unlock Agreement: Upon the expiration of the 10-year term outlined in the FSEA, the estate is required to settle with Unlock through essentially the same methods for the "Permitted Sale" and "Owner Buyout" Settlement Events.

16. In connection with the FSEA, the owner is not obligated to pay back the Investment Payment or to make any periodic payments of principal, interest, or other finance charges.

17. The FSEA is not a loan or an extension of credit. Unlock never intended for the FSEA to operate as a loan or an extension of credit and the parties acknowledged as such in Section 21.5 of the FSEA executed by Plaintiff:

> Not A Loan. Unlock and Owner agree that the Unlock Agreement and the transaction contemplated thereunder, including payment of the Investment Payment and the sale of the Unlock Percentage, is not a loan or extension of credit. Owner does not have an obligation to repay the Investment Payment, and there are not any required periodic payments of principal, interest or any other finance charges. As set fo1 1h herein, Unlock may lose all or a portion of the Investment Payment. The Security Instrument secures Owner's performance and obligations under the Unlock Agreement and not in connection with a promissory note, loan or extension of credit. The Annualized Cost Limit is not an annual percentage rate limit. but rather a limit on Unlock's investment return. To the fullest extent possible, Unlock and Owner agree that the Unlock Agreement is not subject to any federal, state and/or local law concerning consumer credit, including, without limitation, usury ceilings, disclosures, and any other requirements, restrictions, limitations or prohibitions set forth in such laws.

## AUTHENTICATION OF BUSINESS RECORDS

18. I am familiar with Unlock's records including, without limitation, those records identified above.

19. I am able to identify the records described above and establish them as records in fact generally made at or near the time of creation in the regular course of a regularly conducted business activity by or from information transmitted by a person within the business with knowledge of the agreement. Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Docusign Envelope ID: BDFCC95E-1309-48C7-B837-1F31CA14673E

20. The records described above are records kept by Unlock in the course of its regularly conducted business.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and accurate.

Executed this 19.00 day of September, 2024.

DocuSigned by:
Jim Riccitelli
C8AC84B55721412...
JAMES RICCITELLI