# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

ANGELA ROBERTS,

        Plaintiff,

    v.                                  Case No. 1:24-cv-1374-CPO-AMD

UNLOCK PARTNERSHIP SOLUTIONS
AO1, INC., CLEAR EDGE TITLE INC., ABC
INC 1-10, and JOHN DOE 1-10,

        Defendants.

---

# AMICUS BRIEF OF THE CONSUMER FINANCIAL PROTECTION BUREAU
## IN SUPPORT OF NEITHER PARTY

## INTRODUCTION

The Court directed the parties to brief whether Plaintiff Angela Roberts's claim under the Truth in Lending Act (TILA) is time barred. The Consumer Financial Protection Bureau (CFPB) is a federal agency charged with implementing and enforcing TILA. 15 U.S.C. §§ 1604(a), 1607(a). The CFPB respectfully submits this amicus brief, which explains that (1) certain TILA provisions pertaining to residential mortgage loans are governed by a three-year statute of limitations and (2) because Defendant Unlock Partnership Solutions AOI, Inc. (Unlock)'s product meets the definition of a residential mortgage loan, Roberts may have a timely TILA claim.[1] The CFPB takes no position on whether Roberts has adequately alleged such a claim.

## ARGUMENT

### I.   Certain TILA provisions pertaining to residential mortgage loans are subject to a three-year statute of limitations.

Generally, a TILA claim is timely if it is brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). But there is an exception for some claims, including those that allege a "violation of section 1639, 1639b, or 1639c" of TILA. *Id.* Claims under those sections may be brought "before the end of the 3-year period beginning on the date of the occurrence of the violation." *Id.* Section 1639 governs high-cost mortgages. *Id.* §§ 1602(bb), 1639. Sections 1639b and 1639c govern residential mortgage loans. *Id.* §§ 1639b, 1639c. Roberts entered into a contract with Unlock on November 13, 2021, Am. Compl., ECF No. 11 ¶ 8, and filed suit less than three years later on January 11, 2024, Notice of Removal, ECF No. 1 ¶ 4. Accordingly, Roberts's TILA claim is timely to the extent it alleges violations of the TILA provisions that govern high-cost mortgages and residential mortgage loans.

---

[1] Unlock is one of the top providers of a financial product known as a "home equity contract." The CFPB has recently published research on home equity contracts and the potential risks the product poses to consumers. *See* CFPB, Issue Spotlight: Home Equity Contracts (January 15, 2025), https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-home-equity-contracts-market-overview/.

## II.     Unlock's product is a residential mortgage loan.

Under TILA, a "residential mortgage loan" is "any consumer credit transaction that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on a residential property that includes a dwelling." 15 U.S.C. § 1602(dd)(5). Unlock does not contest that its product is secured by a lien on a dwelling, i.e., Roberts' home. Unlock contends, however, that its product is not a residential mortgage loan because it is not credit. That argument is wrong because: (A) Unlock's product satisfies the statutory definition of credit and (B) Unlock's product does not qualify for the regulatory exception applicable to investment plans.

### A.     Unlock's product is credit because it grants a right to defer payment of a debt.

TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." *Id.* § 1602(f); *see also* 12 C.F.R. § 1026.2. Unlock's product satisfies this definition. Under the terms in its contract, Unlock was required to pay Roberts a lumpsum payment equal to approximately 44% of the value of her home. ECF No. 33-4 at 2. In exchange, Roberts incurred an obligation to repay Unlock either 70% of the value of her home or the initial payment plus 18% annual interest. *Id.* Repayment is due either upon a settlement event or after ten years. *Id.* Thus, under the agreement, Roberts incurred a debt (she owes Unlock a payment) and payment of the debt is deferred (she has up to ten years to make the payment). The product is therefore credit.

Unlock emphasizes that it is not guaranteed to recover all of its capital, that its recovery (if any) will depend on future contingencies, and that its contract describes the product as an investment. But none of these facts is determinative of whether Unlock's product is credit.

First, the fact that Unlock is not guaranteed to recover all of its capital is not dispositive. Anytime a creditor issues a loan, it takes on some risk that the loan will not be repaid. That is particularly true for nonrecourse debt, where the creditor's ability to recover its capital is limited to the value of the collateral. But non-recourse debt is still debt. *See* Debt, *Black's Law Dictionary* (12th ed. 2024) (defining "nonrecourse debt"); *see also Pleasant Summit Land Corp. v. Comm'r*, 863 F.2d 263 (3d Cir. 1988) (discussing "nonrecourse debt"). Indeed, many mortgages are nonrecourse. For instance, reverse mortgages are "generally non-recourse," *Bennett v. Donovan*, 703 F.3d 582, 585 (D.C. Cir. 2013), as are purchase-money mortgages in states like California, *see Coker v. JPMorgan Chase Bank, N.A.*, 364 P.3d 176, 192 (Cal. 2016). But nonrecourse mortgages are credit. The fact that Unlock (like other issuers of nonrecourse mortgages) incurs some risk of loss does not differentiate its product from other credit products.

Second, the fact that Unlock's recovery turns on future contingencies (such as the appreciation of the value of the home) is not dispositive. Many forms of credit involve contingent repayment obligations or variable rates, in which the creditor's return varies depending on future events. For example, reverse mortgages make repayment contingent on a termination event, such as the death of a borrower, and the amount of the payment obligation varies based on the valuation of the home at the time of the termination event. *See* 12 C.F.R. § 1026.33(a). Similarly, an adjustable-rate mortgage makes a borrower's repayment obligation dependent on the future fluctuations of a market index. But reverse mortgages and adjustable-rate mortgages are credit. *E.g.*, 15 U.S.C. § 1648; 12 C.F.R. § 1026.20(d)(1)(i).

Third, the characterization (i.e., label) of the product in the contract documents is not dispositive. When assessing whether a product is credit under TILA, courts elevate substance over form, which requires focusing on the economic reality of the transaction rather than the

labels affixed to the transaction. *E.g.*, *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 753–54 (7th Cir. 2000); *Edwards v. Your Credit Inc.*, 148 F.3d 427, 436 (5th Cir. 1998); *Clark v. Rent-It Corp.*, 685 F.2d 245, 248 (8th Cir. 1982). Accordingly, the fact that the loan documents characterize Unlock's product as an investment rather than a loan does not resolve the question of whether the product is covered by TILA. Any other conclusion would create a roadmap for evasion. A lender could simply stamp its loan documents with the label "investment" or "not a loan" to avoid complying with TILA.

   **B.   Unlock's product is not an investment plan.**

   Unlock points to a provision in the commentary to Regulation Z that states that "credit" does not include "[i]nvestment plans in which the party extending capital to the consumer risks the loss of the capital advanced." 12 C.F.R. Pt. 1026, Supp. I, cmt. 2(a)(14)-1.viii. However, this exception does not cover Unlock's product because (assuming *arguendo* that it otherwise qualifies as an investment plan) Unlock does not meaningfully risk the loss of its capital. Unlock's product is structured to ensure that it will profit in all but the most extraordinary circumstance: Roberts was paid a lumpsum equivalent to only 44% of the value of her home but is required to repay Unlock 70% of her home's value. ECF No. 33-4 at 2. That means Unlock will make money even if the value of Roberts's home steeply depreciates. Unlock will generally recover its capital so long as the value of the home depreciates by no more than 39%, which would require a truly unprecedented decline in home values. ECF 33 at 29 & nn. 10-11; *see also* Issue Spotlight, supra note 1 (discussing historic housing market fluctuations).

   It cannot be the case that any time the party advancing capital faces any risk at all that the investment-plan exception applies. Under that view, the exception would swallow the rule. Any loan would qualify as an investment plan because there is always a risk that the consumer will default. And any product could be structured in form (but not in substance) to evade TILA by

making the repayment obligation contingent on events that are highly likely (but not certain) to occur. The facts of this case illustrate the point: a product that is in substance a nonrecourse reverse mortgage could, if Uplock were correct, be recharacterized in form as an equity investment in the consumer's home in order to evade TILA. Under this arrangement, because the lender cannot recover any amounts beyond the proceeds of the sale of the home, the lender would assume the "risk" that the home's value would not be high enough for the lender to recoup the advanced funds. But, of course, that eventuality is extremely unlikely. And this sort of creative arrangement, in which the company advancing capital incurs no meaningful risk to the capital it advanced but nonetheless characterizes its product as an investment, is still credit.

This understanding is confirmed by the text of the exception itself. The commentary offers as an illustrative example of an exempt investment plan: "an arrangement with a home purchaser in which the investor pays a portion of the downpayment and of the periodic mortgage payments in return for an ownership interest in the property, and shares in any gain or loss of property value." 12 C.F.R. Pt. 1026 cmt. 2(a)(14)-1.viii. Notably, the investor must share in *any* loss of value. That is not the case here. In most instances in which Roberts's home depreciates, Unlock would not lose money. That's because she was only paid 44% of the value of her home but is required to payback 70%. More broadly, the focus on whether the investor shares in any gain or loss underscores that this exception applies only where the party advancing capital is meaningfully invested in the underlying asset. It does not apply to "investments" in name only— i.e., products in which the "investor" takes on no meaningful risk but calls the product an investment in hopes of avoiding complying with TILA and Regulation Z.

## CONCLUSION

Roberts's TILA claim is timely to the extent that it alleges a violation of one of the residential mortgage loan provisions to which a three-year statute of limitations applies.

Dated: January 15, 2025

Respectfully submitted,

SETH FROTMAN
  *General Counsel*
STEVEN Y. BRESSLER
  *Deputy General Counsel*
CHRISTOPHER DEAL
  *Assistant General Counsel*
RYAN COOPER
  *Senior Counsel*
/s/ Ryan Cooper
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
202-702-7541
ryan.cooper@cfpb.gov
*Counsel for* Amicus Curiae *Consumer Financial Protection Bureau*