IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA ROBERTS,<br><br>     Plaintiff,<br><br>  v.<br><br>UNLOCK PARTNERSHIP SOLUTIONS AO1, INC., CLEAR EDGE TITLE INC., ABC INC 1-10, and JOHN DOE 1-10,<br><br>     Defendants. | Case No. 1:24-cv-1374-CPO-AMD |

**BRIEF OF *AMICUS CURIAE*
THE COALITION FOR HOME EQUITY PARTNERSHIP
IN SUPPORT OF UNLOCK PARTNERSHIP SOLUTIONS AO1, INC.**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii
INTRODUCTION ........................................................................................................... 1
BACKGROUND ............................................................................................................. 2
    I.    This Court owes no deference to the Bureau's legal interpretations ................ 2
    II.   The Bureau's interpretations of TILA, Regulation Z, and its commentary are incorrect ....................................................................................... 5
CONCLUSION ................................................................................................................ 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*CFPB v. All Am. Check Cashing, Inc.*,
 952 F.3d 591 (5th Cir. 2020) (Smith, J., dissenting) ........................................... 1, 8

*Christopher v. SmithKline Beecham Corp.*,
 567 U.S. 142 (2012) ................................................................................................ 5

*Foster v. Equitykey Real Estate Invs. L.P.*,
 No. 17-cv-67, 2017 WL 1862527 (N.D. Cal. May 9, 2017) ................................ 6-7

*Goldwater Bank, N.A. v. Elizarov*,
 No. 21-cv-616, 2022 WL 18231680 (C.D. Cal. Dec. 12, 2022) ............................. 7

*Kisor v. Wilkie*,
 588 U.S. 558 (2019) ................................................................................................ 4

*Loper Bright Enter. v. Raimondo*,
 603 U.S. 369 (2024) ............................................................................................ 3-4

**Statutes**

15 U.S.C. § 1602(dd)(5) ................................................................................................ 5

15 U.S.C § 1602(f) ........................................................................................................ 5

Administrative Procedure Act ...................................................................................... 3

**Other Authorities**

12 C.F.R. § 226, Supp. i, Subpart a, 2(a)(14)(vii) ..................................................... 5, 8

12 C.F.R. § 2(a)(14)(viii) .......................................................................................... 5-6

Truth in Lending Act, 75 Fed. Reg. 7658, 7851 (Feb. 22, 2010) ................................. 1

## INTRODUCTION

For 15 years, first the Federal Reserve Board and then the Consumer Financial Protection Bureau (CFPB) have maintained official commentary that providers of home-equity-investment (HEI) products, including Defendant Unlock Partnership, have reasonably interpreted to provide that HEIs are not "credit" under the Truth in Lending Act (TILA). *See, e.g.*, Truth in Lending, 75 Fed. Reg. 7658, 7851 (Feb. 22, 2010). For years, the Bureau has interacted with HEI providers without contradicting their reasonable reliance on that commentary—including for almost the entirety of the last presidential administration. Then, just days before the transition, the Bureau injected into the regulatory environment ambiguity that threatens to disrupt the industry's settled expectations.

The Bureau took this unsettling action not through notice-and-comment rulemaking or even informal guidance to industry stakeholders. Indeed, although the Bureau released a public report on HEIs on the same day as its amicus brief, that report says nothing about TILA's requirements. Instead, the Bureau has announced this new position in the last administration's way out the door through an uninvited amicus brief in response to an order to show cause on timeliness in a private dispute–without any input from industry, the public, or any other stakeholders.

This Court should reject the Bureau's eleventh-hour policy shift, which may not even reflect the current administration's position on this question. But even if the Court were to accept the Bureau's brief for filing, it should reject its flawed

arguments on the merits and hold that Unlock's HEI is not a residential mortgage loan under TILA.

## BACKGROUND

The Coalition for Home Equity Partnership comprises companies, like Unlock, that offer HEIs to assist homeowners who have large amounts of equity in their homes but few options to capitalize on that equity. To unlock that equity, these companies purchase from the homeowner the right to share in a percentage of the home's value. The homeowner gets immediate access to their home's equity. In exchange, the company is given the right, at the end of a set term or when the homeowner sells the home, to receive from the homeowner a share of the home's value. The company is not required to exercise its right to acquire an interest in the property. Conversely, the homeowner may also choose to repurchase the company's interest in the property at any time, generally without penalty.

For more than a decade, the Coalition and its members have structured and operated their businesses in reliance on the CFPB's official commentary. The Bureau's January 15 amicus brief threatens to upend that reliance by taking the position that Unlock's HEI product is a residential mortgage loan and therefore subject to TILA. CFPB Amicus Br. at 2. The Coalition offers this brief in response.

**I.      This Court owes no deference to the Bureau's legal interpretations.**

At the outset, it is important to recognize that the Court owes no deference to the Bureau's new position. The Bureau's amicus brief offers a non-binding interpretation of TILA's definition of "credit"—namely, "the right granted by a

2

creditor to a debtor to defer payment of debt or to incur debt and defer its payment"—and the commentary to Regulation Z's implementation of TILA. Under recent Supreme Court precedent, neither interpretation should prevent this Court from exercising its own independent judgment on the meaning of the relevant terms and legal questions presented in this case.

First, this Court plainly owes no deference to the Bureau's interpretation of TILA. Last year, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overturned the *Chevron* doctrine, under which courts were previously required to afford deference to agency interpretations of ambiguous statutory terms. *Id.* at 412. The Court emphasized that Article III "assigns to the Federal Judiciary the responsibility and power to adjudicate 'Cases' and 'Controversies,'" and that, in exercising that responsibility, the "final 'interpretation of the laws'" is "the proper and peculiar province of the courts." *Id.* at 384-85. The Court explained that the Administrative Procedure Act "codifie[d] for agency cases the unremarkable, yet elementary proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment," not by abdicating that responsibility to the political branches. *Id.* at 387, 391-92. Under *Loper Bright*, the proper interpretation of TILA's definition of "credit" is thus a question on which this Court "must exercise independent judgment," *id.* at 394, without deference to the Bureau's views.

Second, this Court likewise owes no deference to the Bureau's interpretation of Regulation Z and its commentary, which implements TILA. Just a few terms

3

before *Loper Bright*, in *Kisor v. Wilkie*, 588 U.S. 558 (2019), the Supreme Court preserved some level of deference for agency interpretations of its own regulations. But the Court tightly restricted the circumstances where such deference is appropriate. Courts may afford such deference only if four conditions are met: (1) "the regulation [at issue] is genuinely ambiguous"; (2) "the regulatory interpretation must be one actually made by the agency"; (3) "the agency's interpretation must in some way implicate its substantive expertise"; and (4) "an agency's reading of a rule must reflect 'fair and considered judgment,'" meaning that a "court may not defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties." *Id.* at 558, 574, 577, 579 (citations omitted). The rigorous application of those requirements is all the more pressing in light of the constitutional and administrative law principles articulated in *Loper Bright*.

    *Kisor* deference does not apply to the Bureau's position here. Even assuming, *arguendo*, that the first three conditions for deference are met, the Bureau's introduction of a brand new stance to HEIs through an amicus brief in a lawsuit between two private parties hardly constitutes "fair and considered judgment" and certainly creates "unfair surprise" for HEI providers. Indeed, when "an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, the potential for unfair surprise is acute." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012). HEI products have, since 2006, been offered outside of TILA's regulatory scheme. The Coalition's members

4

have repeatedly interfaced with the Bureau about the proper classification of these products under TILA. Despite its familiarity with HEI products, the Bureau has never brought an enforcement action against an HEI provider and otherwise had not publicly suggested that TILA applies before the day it filed its brief. The Bureau's announcement of a new position in an amicus brief is precisely the sort of unfair surprise that does not warrant this Court's deference.

## II. The Bureau's interpretations of TILA, Regulation Z, and its commentary are incorrect.

Exercising independent judgment, the Court should reject the Bureau's position. An HEI is not a residential mortgage loan governed by TILA because it does not extend credit.

TILA defines a "residential mortgage loan" as "any consumer *credit* transaction that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling." 15 U.S.C. § 1602(dd)(5) (emphasis added). TILA defines "credit," in turn, as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." *Id.* § 1602(f). Regulation Z and its official commentary confirm that the term "credit" does not include option contracts, 12 C.F.R. § 226, Supp. i, Subpart a, 2(a)(14)(vii), or "[i]nvestment plans in which the party extending capital to the consumer risks the loss of the capital advanced." *Id.* at 2(a)(14)(viii). The commentary then offers as one example of an investment plan "an arrangement with a home purchaser in which the investor pays a portion of the downpayment and of the periodic mortgage payments in return for an ownership

5

interest in the property, and shares in any gain or loss of property value." *Id.* at 2(a)(14)(viii).

Under those longstanding regulatory provisions and guidance, an HEI is not a "residential mortgage loan." Unlike a loan, there is no promise that the investor will be repaid those funds with interest. Instead, like an option contract, the HEI provider purchases the right to a percentage of the home's value after a set amount of time. If the home appreciates, the HEI provider will likely exercise its right and benefit from the deal. But the HEI provider is not obligated to exercise its right, and it may not do so if the house steeply depreciates in value or suffers some other loss. And like the scenario in the Bureau's official commentary on investment plans, the HEI provider invests in the home's equity in return for an ownership interest in the property. If the home appreciates, the investor (the HEI provider) shares in that appreciation. But by the same token, if the home depreciates, the investor could lose all or a portion of its investment.

Indeed, the only published federal decisions addressing this issue have applied this same reasoning to reach this same conclusion. In *Foster v. Equitykey Real Estate Investments L.P.*, No. 17-cv-67, 2017 WL 1862527 (N.D. Cal. May 9, 2017), for example, the Northern District of California considered a home-equity product in which the defendant paid $196,000 to the homeowner for the option to retain 100% of the home value's appreciation at the end of a set term. *Id.* at *2. The court held that the HEI product was not a loan under TILA. *Id.* at *4; *see also*

*Goldwater Bank, N.A. v. Elizarov*, No. 21-cv-616, 2022 WL 18231680 (C.D. Cal. Dec. 12, 2022) (agreeing with the *Foster* decision).

In reaching that conclusion, the *Foster* court emphasized that the homeowner would never need to repay the initial payment if the HEI provider chose not to exercise its option. *Id.* It acknowledged that while housing values typically increased over the term of the HEI, leading to the HEI provider calling the option, that was "not certain." *Id.* at *4 n.2. The court thus reasoned that "there [was] no way to know whether [the homeowner] will ever be required to pay," disqualifying the HEI from being classified as a loan. *Id.* at *4. The court also found similarities between the HEI and an investment plan. The court explained that "[i]n the present transaction, [the HEI provider] risked the loss of the capital it advanced." *Id.* at *5. The court recognized that although property values in the local area had increased for many years "in a manner that at times ha[d] seemed inevitable, the real estate market could have stagnated or declined," as it had during the 2008 housing financial crisis. *Id.*

The Bureau's contrary position is unpersuasive. The Bureau accepts that, if an HEI product qualifies as an investment plan, it would not be subject to TILA as a "residential mortgage loan," and it appears willing to assume that, in theory, HEI products could qualify as investment plans. *See* CFPB Amicus Br. 4 (assuming as much "*arguendo*"). But the Bureau argues that Unlock's HEI product does not qualify because it does not face a "meaningful risk" of not recovering its capital. Indeed, the Bureau seems to suggest that to qualify as an investment plan, the HEI

7

provider "must share in *any* loss of value" of the home. *Id.* at 5. But the passage on which the Bureau relies for that assertion is not the definition of an investment plan, only an example that the term "includ[es]." 12 C.F.R. § 226, Supp. i, Subpart a, 2(a)(14)(vii). The actual definition of investment plan, straight from the CFPB's own official commentary, requires only that "the party extending capital to the consumer risks the loss of the capital advanced." *Id.*

It cannot be that no product can qualify as an investment plan under that definition unless its investor internalizes *all* risk. Investments vary in the levels of risk they pose to the investor. Investors compensate for this risk in different ways, varying the amount of capital upfront or the percentage of return on their investments later. But a low-risk investment does not turn into credit simply because the investor will not lose its capital when there is *any* loss or depreciation of the asset. Likewise, a structured investment is not transformed from an investment to a loan because the investor is given priority over other classes of investors.

Other than the Bureau's unrealistic categorical suggestion, the Bureau provides no sound basis for measuring a "meaningful risk" requirement. To be sure, the Bureau objects to one specific term of Unlock's HEI product and risk exposure. But HEI contracts are far more complicated than a single term. And even if that were the sole focus of the analysis, where would the Bureau or court draw the line? Would a 20% buffer qualify as meaningful risk? How about 30%? The Bureau's failure to answer these questions or provide any real standard only confirms that, if

8

such a line is to be drawn, the appropriate method is through rulemaking, or other appropriate public means, where stakeholders can fully participate, a more complete picture of these products across the industry may be fully considered, and further resources and expertise can be brought to bear, rather than through amicus practice in private litigation. The Coalition would welcome participation in such a process. But until that happens, the Court should not alter the status quo, under which HEI products are not loans under TILA.

## CONCLUSION

For the foregoing reasons, the Court should conclude that HEIs are not subject to TILA because they do not extend credit under Regulation Z.

Dated: January 30, 2025

Respectfully submitted,

/s/ *Aleksandra Kaplun*
Aleksandra Kaplun
Jeffrey Paul Ehrlich
Jonathan Y. Ellis
Katherine C. Richardson
MCGUIREWOODS LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020
T: (212) 548-7015
F: (212) 715-2314
akaplun@mcguirewoods.com

*Counsel for the Coalition for Home Equity Partnership*

9