IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANGELA ROBERTS,

      Plaintiff,

   v.                                  Case No. 1:24-cv-1374-CPO-AMD

UNLOCK PARTNERSHIP SOLUTIONS
AO1, INC., CLEAR EDGE TITLE INC., ABC
INC 1-10, and JOHN DOE 1-10,

      Defendants.

**CONSUMER FINANCIAL PROTECTION BUREAU'S MOTION TO WITHDRAW
AMICUS BRIEF IN SUPPORT OF NEITHER PARTY**

**Motion Day: March 17, 2025**

      The Consumer Financial Protection Bureau (CFPB), a federal agency responsible for administering and enforcing the Truth in Lending Act (TILA), respectfully moves the Court to withdraw the amicus brief it filed on January 15, 2025 (captioning the motion as supporting neither party). That amicus brief was directed at addressing a question raised by the Court in its December 18, 2024 Order to Show Cause, ECF No. 52.

      In support of this Motion, the CFPB states as follows:

      1.     Just five days before the new presidential Administration commenced, CFPB moved for leave to file an amicus brief in this private litigation.

      2.     Specifically, the CFPB argued that the Forward Sale and Exchange Agreement ("FSEA") offered by Defendant Unlock "satisfies the statutory definition of credit" and "does not qualify for the regulatory exception applicable to investment plans." CFPB Amicus Brief, ECF No. 58 at 2.

      3.     Following the filing of the amicus brief, the CFPB is reconsidering the arguments

it previously asserted, the response by Unlock, and the agency's existing rule which states that "option contracts" and "investment plans" are not considered types of "credit" that are subject to TILA. *See* 12 C.F.R. pt. 1026, Supp. 1, cmt. 2(a)(14)-1(vii), (viii).

4. After this review conducted by current CFPB leadership, the Bureau wishes to withdraw the amicus brief that it filed in this case because it now believes:

5. ***First***, the amicus brief at least arguably amends Comment 2(a)(14)-1(viii) (a provision in the Code of Federal Regulations) without going through the required notice-and-comment process demanded by the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, before amending that regulatory provision, rendering the amicus brief a legally void event. *See generally* 5 U.S.C. § 553.

6. ***Second***, the amicus brief does not grapple with the factors required by the Supreme Court before an agency may call for deference to its interpretation of one of its regulations under *Kisor v. Wilkie*, 588 U.S. 558 (2019) (requiring an agency to first establish that its regulation is "genuinely ambiguous" and then requiring an evaluation of the agency's proposed interpretation for reasonableness, its character and context, and whether the interpretation implicates the agency's substantive expertise, among other factors).

7. ***Third***, the amicus brief was filed here in a case where application of a new agency interpretation of Comment 2(a)(14)-1(vii), (viii) could harm the property interests of Unlock without providing it with advance notice of that interpretation before Unlock acted to draft and then began to make use of the FSEA in its commercial dealings with individuals like the Plaintiff. That may implicate serious due process concerns. *See, e.g., CBS Corp. v. FCC*, 663 F.2d 122, 144 (3d Cir. 2011) ("Because '[d]ue process requires that parties receive fair notice before being deprived of property,' we have repeatedly held that '[i]n the absence of notice—for example, where the regulation is not sufficiently clear to warn a party about what is expected of

it—an agency may not deprive a party of property by imposing civil or criminal liability.'"), *quoting Trinity Broadcasting of Fla. v. FCC*, 211 F.3d 618, 628 (D.C. Cir. 2000).[1]

8. At the very least, the CFPB wishes to engage in further consideration before taking any positions concerning whether the FSEA at issue in this action or "home equity contracts" in general are "residential mortgage loans" or some other form of credit subject to TILA, making the January 15, 2025 amicus brief premature. Moreover, new rulemaking activity may be required in this area before the CFPB can do so.

9. Additionally, the CFPB wishes to engage in further consideration before taking any positions as to whether the FSEA or "home equity contracts" in general qualify for the regulatory exception applicable to investment plans. Similarly, new rulemaking activity may be required in this area before the CFPB can do so.

10. Finally, in light of the CFPB's belief that the amicus brief failed to account for several important principles of law ((1) APA notice-and-comment rulemaking requirements, (2) the required *Kisor* analysis, and (3) fair notice), as well as transgressing the spirit of avoiding unfair regulatory surprise, the CFPB wishes to withdraw the January 15, 2025 amicus brief and accordingly requests that the Court order it stricken from the record.

11. The January 15, 2025 amicus brief, in short, can no longer properly "contribute to the court's understanding of the issues being presented to the court." *United States v. Bayer Corp.*, Civ. A. No. 07-0001 (JLL), 2014 WL 12625934 (D.N.J. Oct. 23, 2014) (cleaned up), *citing Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987).

12. The CFPB has conferred with counsel for the parties. In response, Plaintiff Angela Roberts (Roberts) stated: "While the plaintiff does not object to the CFPB informing the Court that it is

---

[1] *See, e.g.*, 84 Fed. Reg. 55,239, § 2(e) (Oct. 15, 2019) ("'Unfair surprise' means a lack of reasonable certainty or fair warning of what a legal standard administered by an agency requires. The meaning of this term should be informed by the examples of lack of fair notice discussed by the Supreme Court in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 & n.15 (2012).").

reconsidering its position, the plaintiff objects to the filing of any substantive arguments on the day before the hearing. Additionally, it would violate the common law and First Amendment rights of access to judicial records and civil proceedings to strike court filings by the government that were the subject of motion practice and briefing by the parties. *See, e.g.*, *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) ("A judicial record is a document that has been filed with the court ... or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.")." Defendant Unlock Partnership Solutions, AOI, Inc. (Unlock) does not oppose the withdrawal of the amicus brief. At the time of this filing, Defendant Clear Edge Title Inc. had not responded to the email sent by counsel for the CFPB requesting its position.

Accordingly, the CFPB respectfully requests that the Court grant this Motion, withdraw the amicus brief, and strike it from the record.

Dated: February 19, 2025

Respectfully submitted,

MARK PAOLETTA
  *Chief Legal Officer*
DANIEL SHAPIRO
  *Deputy Chief Legal Officer*
STEVEN BRESSLER
  *Deputy General Counsel*
CHRISTOPHER DEAL
  *Assistant General Counsel*

 /s/ Ryan Cooper
RYAN COOPER
  *Senior Counsel*
CONSUMER FINANCIAL PROTECTION
   BUREAU
1700 G St. NW
Washington, DC 20552
202-702-7541
ryan.cooper@cfpb.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 19, 2025, I electronically filed the foregoing with the Clerk of the District Court, using the Court's CM/ECF system, which sent notification of such filing to all counsel of record.

                                                                                                    /s/ Ryan Cooper
                                                                                                    Ryan Cooper