# EXHIBIT A-2

Prepared by, recording requested by, and when recorded mail to:

*Robert Price*

Unlock Partnership Solutions AO1 Inc.
1 Rockefeller Plaza, Suite 1280
New York, NY 10020

Exchange Agreement ID: 243 / 16

Property APN: 243 / 16

_____

*C-NJ8164-09*                                        (Space Above for Recorder's Use)

ATTENTION: COUNTY CLERK THIS PERFORMANCE MORTGAGE IS A SECURITY AGREEMENT AND FINANCING STATEMENT UNDER THE NEW JERSEY UNIFORM COMMERCIAL CODE. PORTIONS OF THE PROPERTY ARE GOODS WHICH ARE OR ARE TO BECOME AFFIXED TO OR FIXTURES ON THE LAND. THIS PERFORMANCE MORTGAGE IS, THEREFORE, TO BE FILED FOR RECORD OR RECORDED AS A FIXTURE FILING IN, AMONG OTHER PLACES, THE REAL ESTATE RECORDS OF EACH COUNTY IN WHICH SAID LAND OR ANY PORTION THEREOF IS LOCATED. THE OWNER/DEBTOR IS THE OWNER OF A RECORD INTEREST IN THE REAL ESTATE CONCERNED. THIS INSTRUMENT IS ALSO TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS.

*Block/Lot: 243/16*     PERFORMANCE MORTGAGE

This PERFORMANCE MORTGAGE, together with any riders hereto (this "Performance Mortgage"), is made as of NOVEMBER 13, 2021 ("Effective Date"), between ANGELA ROBERTS ("Owner"), whose address is 48 BUCKEYE LANE, WILLINGBORO, NJ 08046, and UNLOCK PARTNERSHIP SOLUTIONS AO1 INC., a Delaware corporation, and its successors and assignees ("Mortgagee" or "Unlock"), whose address is 1 Rockefeller Plaza, Suite 1280, New York, NY 10020.

RECITALS     *single*

A. This Performance Mortgage is given in connection with the execution of that certain Forward Sale and Exchange Agreement ("Exchange Agreement"), which is hereby incorporated into this Performance Mortgage as if set forth in full, and entered into by and between Owner and Mortgagee, pursuant to which Owner (a) grants and conveys to Mortgagee the right to receive an undivided percentage interest (the "Unlock Percentage") of the future value of Owner's real property and the Improvements (as defined herein) located in the County of BURLINGTON, State of New Jersey, as more particularly described in Schedule A attached hereto and incorporated herein by this reference, and commonly known as 48 BUCKEYE LANE, WILLINGBORO, NJ 08046 ("Land"), and (b) agrees that upon the occurrence of certain events under the Exchange Agreement, Unlock has the right to convert the Unlock Percentage (the "Conversion") to an undivided fee simple ownership interest equal to the Unlock Percentage in and to the Real Property (as defined herein). In exchange for granting and conveying the Unlock Percentage to Mortgagee, Mortgagee

Book # OR 13580 Page # 5813 Inst. # 5710663

paid to Owner a payment amount equal to ONE HUNDRED AND FIFTEEN THOUSAND AND SIXTY-TWO Dollars ($115,062.00) (the "**Investment Payment**"), subject to the terms and conditions of the Exchange Agreement.

      B.      Mortgagee desires to secure the rights granted to it in the Exchange Agreement and the performance of Obligations (hereinafter defined).

      C.      This Performance Mortgage is given pursuant to the Exchange Agreement, and payment, fulfillment, and performance of the obligations due under the Exchange Agreement and certain other ancillary documents executed by Owner and Mortgagee concurrently herewith (which documents, together with this Performance Mortgage are collectively termed the "**Transaction Documents**") are secured by this Performance Mortgage in accordance with the terms set forth herein.

      D.      Pursuant to the Exchange Agreement, Owner has made certain covenants and promises to, or for the benefit of, Mortgagee in connection with the Real Property, all as more particularly described, and on the terms and conditions stated in the Exchange Agreement.

      E.      Execution of this Performance Mortgage is intended, among other things, to give notice, in the form set out in Schedule B attached hereto and incorporated herein by this reference, of (a) the Exchange Agreement, (b) certain rights and responsibilities of Owner as to Mortgagee, and (c) the covenants and promises set forth in the Exchange Agreement that run with the land and will be binding upon any person who acquires Owner's interest in the Real Property so long as the Exchange Agreement has not expired or been terminated.

      1.      **Granting Clause.** OWNER DOES HEREBY IRREVOCABLY mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to and grant a security interest to Mortgagee and its respective successors and assigns, with the right of entry and possession in the following property, rights, interests and estates now owned, or hereafter acquired by Owner (collectively, the "**Property**"):

      a.      <u>Real Property.</u> The Land together with all improvements, replacements and additions now or hereafter erected on the Land (collectively, the "**Improvements**") and all easements, appurtenances and fixtures now or hereafter a part of the Land and Improvements (collectively, the "**Real Property**").

      b.      <u>Leases and Rents.</u> All leases, subleases, subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Real Property, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Owner of any petition for relief under any Creditors Rights Laws (collectively, the "**Leases**") and all right, title and interest of Owner, its successors and assigns therein and thereunder,

including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Owner or its agents or employees from any and all sources arising from or attributable to the Real Property, including, all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Owner and proceeds, if any, from business interruption or other loss of income insurance whether paid or accruing before or after the filing by or against Owner of any petition for relief under any Creditors Rights Laws (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Settlement Payment. As used herein, "**Creditors Rights Laws**" shall mean any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to its debts or debtors. The assignments of Owner's interests under this clause (b) is a security interest in such interests, including the cash proceeds, cash, checks and deposit accounts relating thereto.

        c.     Insurance Proceeds. All insurance proceeds in respect of the Real Property under any insurance policies covering the Real Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Real Property (collectively, the "**Insurance Proceeds**").

        d.     Condemnation Awards. All condemnation awards, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property by reason of any taking or condemnation, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Real Property (collectively, the "**Awards**").

        e.     Easements and Rights of Way. All easements, rights of way, appurtenances and other rights used in connection with the Real Property or as a means of access thereto.

        f.     Additional Land. All additional lands, estates and development rights hereafter acquired by Owner for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Performance Mortgage;

        g.     Fixtures and Personal Property. All machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures, inventory and goods) and other property of every kind and nature whatsoever, owned by Owner, or in which Owner has or shall have an interest, or usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever

Book # OR 13580 Page # 5813 Inst. # 5710663

owned by Owner, or in which Owner has or shall have an interest, or usable in connection with the present or future operation and occupancy of the Real Property (collectively, the **"Personal Property"**), and the right, title and interest of Owner in and to any of the Personal Property which may be subject to any security interests, as defined under the Uniform Commercial Code as in effect in the applicable jurisdiction (the "UCC"), superior in lien to the lien of this Performance Mortgage and all proceeds and products of the above; and

    h.  Other Rights. Any and all other rights of Owner in and to the items set forth in clauses (a) through (g) above.

  CONDITIONS TO GRANT: TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Mortgagee and its successors and assigns, forever, to secure Owner's payment to Mortgagee of the Settlement Payment and the performance of the Obligations at the time and in the manner provided in the Transaction Documents and this Performance Mortgage;

  PROVIDED, HOWEVER, these presents are upon the express condition that, if Owner shall well and truly (a) pay to Mortgagee the Settlement Payment at the time and in the manner provided in the Exchange Agreement, this Performance Mortgage and the other Transaction Documents, (b) perform the Obligations as set forth in the Exchange Agreement, this Performance Mortgage and the other Transaction Documents, and (c) abide by and comply with each and every covenant and condition set forth in the Exchange Agreement, this Performance Mortgage and the other Transaction Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Owner's obligation to indemnify and hold harmless Mortgagee pursuant to the provisions hereof shall survive any such payment and release.

  2.  **Secured Obligations.**

    a.  Obligations. Owner makes the grant, transfer and assignment set forth in Section 1 for the purpose of securing the following **"Obligations"**:

      (1)  the payment of the Settlement Payment;

      (2)  all other obligations of Owner contained herein;

      (3)  the payment and/or performance of all other obligations of Owner contained in the Transaction Documents;

      (4)  each obligation of Owner contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Exchange Agreement;

      (5)  any expenditures made by Mortgagee pursuant to, or under, this Performance Mortgage, including, without limitation, any Protective Advances; and

      (6)  payment of all fees and expenses (including, as allowed by applicable

Book # OR 13580 Page # 5813 Inst. # 5710663

law, court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of in-house counsel (collectively "**Attorneys' Fees**") incurred by Mortgagee in the enforcement and collection of the obligations listed above and the protection of Mortgagee's rights related thereto, whether such fees are incurred in any state, federal or bankruptcy court or otherwise and whether or not litigation or arbitration is commenced. Attorneys' Fees shall include, Attorneys' Fees incurred in any state, federal or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to this Performance Mortgage, to the interpretation or enforcement of the parties' rights under this Performance Mortgage, or to the Property.

    **b.**  <u>Investment Payment.</u> Owner shall not be obligated to repay any part of the Investment Payment; and therefore, such item shall not be included within the Obligations. The foregoing shall <u>not</u>, however, in any way limit any payment calculated and agreed by Owner to be paid pursuant to the Exchange Agreement.

    3.  **UCC Security Agreement and Fixture Filing.** This Performance Mortgage also is intended to be and shall constitute a "security agreement" within the meaning of the UCC for any items of personal property that constitute fixtures or are specified as part of the Property and that under applicable law may be subject to a security interest under the UCC. Owner hereby grants to Mortgagee a security interest in those items to secure the performance and payment of the Obligations.

    **a.**  Owner agrees that Mortgagee may file either this Performance Mortgage, or a copy of it, or a UCC-1 Financing Statement in the real estate records or other appropriate index and/or in the New Jersey Division of Revenue & Enterprise Services or other appropriate office of any state or jurisdiction, as a financing statement for any of the items specified above as part of the Property.

    **b.**  This Performance Mortgage constitutes a financing statement filed as a fixture filing pursuant to, and is effective in accordance with, the applicable provisions of Article 9 of the UCC, and any similar or successor provisions. With respect to said fixture filing (a) debtor is Owner and Owner's name and address appear in the first paragraph of this Performance Mortgage, and (b) the secured party is Mortgagee and Mortgagee's name and address appears in the first paragraph of this Performance Mortgage. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Owner. By executing and delivering this Performance Mortgage, Owner hereby grants to Mortgagee, as security for the Obligations, a security interest in all "accounts", "deposit accounts", "chattel paper", "equipment", "fixtures", "inventory", "general intangibles" and "goods" (as such terms are defined in the UCC) to the full extent that the foregoing may be subject to the UCC.

    **c.**  Mortgagee may file such extensions, renewals, amendments and releases as are appropriate to reflect the status of its security interest.

    **d.**  Owner shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Mortgagee may reasonably require.

Book # OR 13580 Page # 5813 Inst. # 5710663

c.       On any default hereunder, Mortgagee shall have the remedies of a secured party under the UCC and may also invoke the remedies in Section 7. In exercising any of these remedies, Mortgagee may proceed against the items of Real Property, fixtures or improvements separately or together and in any order whatsoever without in any way affecting the availability of Mortgagee's remedies under the UCC or the remedies in Section 7.

4.       **Assignment of Leases and Rents.** Owner hereby absolutely and unconditionally assigns to Mortgagee all of Owner's right, title and interest in and to all current and future Leases and Rents; it being intended by Owner that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.

a.       Owner hereby gives to, and confers upon, Mortgagee the right, power and authority, during the continuance of this Performance Mortgage, to collect the Rents, reserving unto Owner the right, prior to any default by Owner in payment of the Obligations secured hereby or in performance of any agreement hereunder, to collect and retain such Rents, as they become due and payable.

b.       Upon any such default, Mortgagee may at any time without notice, either in person, by agent, or by appointment of a receiver, and without regard to the adequacy of any security for the Obligations secured hereby, enter upon and take possession of the Property or any part of it, in its own name sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including Attorneys' Fees to the Obligations secured hereby, and in such order as Mortgagee may determine. Mortgagee's rights under this clause (b) include its rights to appoint a receiver under all applicable laws, as in effect from time to time.

c.       The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application of such rents, issues and profits pursuant to this Performance Mortgage, shall not cure or waive any default or notice of default under this Performance Mortgage or invalidate any act done pursuant to such notice.

d.       Nothing in this section shall permit Owner to lease or rent the Property in contravention of any provision of the Exchange Agreement; nor shall anything in this section modify any provision in the Exchange Agreement relating to the use, lease or occupancy of the Property.

5.       **Covenants, Representations and Warranties of Owner .** Owner hereby agrees as follows:

a.       Owner represents and warrants that Owner has good and marketable title to the Property and has the right to grant and convey the Property.

b.       Owner will observe and perform all of the covenants and agreements under the Transaction Documents.

c.       To appear in and defend any action or proceeding purporting to affect the security of this Performance Mortgage or the rights or powers of Mortgagee; and to pay all costs and

expenses of Mortgagee (including cost of evidence of title and Attorneys' Fees) incurred: (i) in any state, federal or bankruptcy court, in any action or proceeding in which Mortgagee may appear, and in any suit brought by Mortgagee to foreclose this Performance Mortgage or to collect the Obligations or to protect Mortgagee's rights under this Performance Mortgage; and/or (ii) in connection with the enforcement of any provisions of this Performance Mortgage or in connection with foreclosure upon the collateral granted under this Performance Mortgage (whether or not suit is filed).

        **d.**      To pay at least ten days before delinquency all taxes and assessments affecting the Property; and all encumbrances, charges and liens, with interest, on the Property (or any part of the Property), which are prior or could obtain priority to the lien or to the rights granted under this Performance Mortgage, and all costs, fees and expenses of this Performance Mortgage.

        (1)      If Owner fails to make any payment or to do any act as provided in this Performance Mortgage, Mortgagee may (but shall not be obligated to) make the payment or do the act in the required manner and to the extent deemed necessary by Mortgagee to protect the security for this Performance Mortgage, which payments and related expenses (including Attorneys' Fees) shall also be secured by this Performance Mortgage.

        (2)      Such performance by Mortgagee shall not require notice to, or demand on, Owner and shall not release Owner from any obligation under this Performance Mortgage.

        (3)      Mortgagee shall have the following related rights and powers: (A) to enter upon the Property for the foregoing purposes, (B) to appear in and defend any action or proceeding purporting to affect the Property or the rights or powers of Mortgagee under this Performance Mortgage, (C) to pay, purchase, contest or compromise any encumbrance, charge, or lien that in the judgment of Mortgagee appears to be prior or superior to this Performance Mortgage, and (D) to employ counsel, and to pay such counsel necessary expenses and costs, including Attorneys' Fees.

        **e.**      To pay immediately upon demand all sums expended by Mortgagee pursuant to this Performance Mortgage; and to pay interest on any of the foregoing amounts demanded by Mortgagee at the rate as specified in the Transaction Documents from the date of such demand (or as otherwise specified by applicable law) from the date of such demand, not to exceed the maximum rate allowed by law at the time of such demand.

        **f.**      To keep the Property in good condition and repair, and in a condition substantially similar to its condition on the date hereof, except for normal wear and tear and shall not remove or demolish any building thereon, and shall not materially destroy, damage or impair the Property, allow the Property to materially deteriorate or commit waste on the Property. Owner shall also comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon and shall not permit any act upon the Property in violation of the law.

        **g.**      Not to initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may

be made of the Property or any part thereof.

       **h.** On demand, to fully cooperate with Mortgagee in filing and recording this Performance Mortgage and any of the other Transaction Documents creating a lien or security interest or evidencing the lien hereof, including without limitation any financing statements, upon the Property and other collateral and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Mortgagee in, the Property. Owner will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Transaction Documents, and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Transaction Documents or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

       **i.** At the cost of Owner, and without expense to Mortgagee, to do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Owner may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Performance Mortgage or for filing, registering or recording this Performance Mortgage, or for complying with all legal requirements. Owner, on demand, will execute and deliver and hereby authorizes Mortgagee to file one or more financing statements or execute in the name of Owner to the extent Mortgagee may lawfully do so, one or more chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Property. Owner grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this clause (i), and applicable law.

       **6.** **Power of Attorney.** Owner hereby irrevocably appoints Mortgagee as Owner's attorney-in-fact (such agency being coupled with an interest). As such attorney-in-fact Mortgagee may, after providing notice to Owner pursuant to the Exchange Agreement (without the obligation to do so) in Mortgagee's name, or in the name of Owner, prepare, execute and file or record financing statements, continuation statements, applications for registration and like documents necessary to create, perfect or preserve any of Mortgagee's security interests and rights in or to any of the Property, and, upon a default under this Performance Mortgage, take any other action required of Owner; provided, however, that Mortgagee as such attorney-in-fact shall be accountable only for such funds as are actually received by Mortgagee.

       **7.** **Default and Foreclosure.** **Mortgagee shall give notice to Owner prior to**

Book # OR 13580 Page # 5813 Inst. # 5710663

**enforcement following Owner's breach of any covenant or agreement in the Transaction Documents. The notice shall specify: (i) the default; (ii) the action required to cure the default; (iii) a date, not less than thirty (30) days from the date the notice is given to Owner, by which the default must be cured; and (iv) that failure to cure the default on or before the date specified in the notice may result in all sums secured by this Performance Mortgage becoming due and payable, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Owner of the right to reinstate after enforcement and the right to bring a court action to assert in the foreclosure proceeding the non-existence of a default or any other defense of Owner to enforcement and foreclosure and any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other applicable law. If the default is not cured on or before the date specified in the notice, Mortgagee at its option may require immediate payment in full of all sums secured by this Performance Mortgage without further demand and may foreclose this Performance Mortgage by judicial proceeding and apply any other remedies permitted by applicable law. Mortgagee shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Notice provided to Owner under this Performance Mortgage shall be delivered to the address specified in Section 21 in accordance with the applicable terms and conditions of the Exchange Agreement unless otherwise required by applicable law.

     **a.**    Exercise of Mortgagee's remedies under this Performance Mortgage shall be in compliance with applicable law.

     **b.**    Any proceeds of any disposition under this Section 7 shall not cure any Event of Default or reinstate any of the obligations secured under this Performance Mortgage for the purposes of applicable law or otherwise.

     **c.**    Mortgagee may exercise its right to foreclose by judicial action pursuant to applicable law and/or seek any other remedy available at law or in equity to the maximum extent permitted by applicable law. Any provision of this Performance Mortgage which is prohibited or unenforceable in any jurisdiction, will, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction will not invalidate or render unenforceable such provision in any other jurisdiction.

     8.    **Late Performance.** By accepting performance of any obligation after its due date, Mortgagee does not waive its right either to require prompt performance when due of all other obligations or to declare default for such failure to perform.

     9.    **Intentionally Omitted.**

     10.    **Intentionally Omitted.**

     11.    **Intentionally Omitted.**

Book # OR 13580 Page # 5813 Inst. # 5710663

12.  **Intentionally Omitted.**

13.  **Reserved.**

14.  **Successors.** This Performance Mortgage applies to, inures to the benefit of, and binds all parties to this Performance Mortgage, their heirs, legatees, devisees, administrators, executors, successors, and assignees. The term "Mortgagee" shall include any successor or assignee of Mortgagee's rights in the Exchange Agreement and in this Performance Mortgage, whether or not named as Mortgagee in this Performance Mortgage. In this Performance Mortgage, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

15.  **Joint and Several Liability.** If more than one person signs this Performance Mortgage as Owner, the obligations of each signatory shall be joint and several.

16.  **Multiple Owners.** If there are multiple Owners of the Property:

   a.    this Performance Mortgage must be signed by each such Owner;

   b.    all rights and powers specified for Owner in this Performance Mortgage must be approved and exercised unanimously by all such multiple Owners;

   c.    all such multiple Owners shall be jointly and severally liable for all liabilities and obligations specified for Owner under this Performance Mortgage;

   d.    notice required to be given by, or to, Owner will be deemed adequately given if given by, or to, any of Owners using the contact information set forth in Section 21; and

   e.    Mortgagee may treat any notice received from any one Owner as notice from all Owners.

17.  **Revocable Trust.** If any Owner is/are the trustee(s) of a Revocable Trust (as defined herein):

   a.    all trustees of the Revocable Trust and all individuals having the power to revoke the Revocable Trust (referred to herein as "owners of the Revocable Trust") must sign this Performance Mortgage in their respective capacities as trustees and/or owners of the Revocable Trust, and each trustee and owner of the Revocable Trust who signs this Performance Mortgage hereby represents and warrants that all trustees and owners of the Revocable Trust have been disclosed to Mortgagee;

   b.    any trustee of the Revocable Trust who is also an owner of the Revocable Trust need only sign this Performance Mortgage once for it to be binding on such person both as trustee and as owner of the Revocable Trust;

   c.    all rights and powers specified for, and all actions required of, Owner in this Performance Mortgage must be approved and exercised unanimously by all trustees of the Revocable Trust;

   d.    all trustees and all owners of the Revocable Trust shall be jointly and severally

Book # OR 13580 Page # 5813 Inst. # 5710663

liable for all liabilities and obligations specified for Owner under this Performance Mortgage;

   **e.**  all representations and warranties by Owner in this Performance Mortgage are made by all trustees of the Revocable Trust on behalf of the Revocable Trust and by all owners of the Revocable Trust;

   **f.**  notice required to be given by, or to, any Owner will be deemed adequately given if given by, or to, any of the trustees of the Revocable Trust using the contact information set forth in Section 21; and

   **g.**  Mortgagee may treat any notice received from any one trustee of the Revocable Trust as notice from all trustees of the Revocable Trust and from Owner.

  As used herein, "**Revocable Trust**" shall mean a revocable trust, revocable living trust, inter vivos trust, revocable family trust or similar trust established in accordance with the laws of any state.

  18.  <u>**Intentionally Omitted.**</u>

  19.  <u>**Extent of Lien.**</u> **The lien granted under this Performance Mortgage shall encumber Owner's entire interest in the Property, notwithstanding the fact that the Exchange Agreement relates to only a fractional interest in the Property.**

  20.  <u>**Miscellaneous.**</u>

   **a.**  So long as any of the Obligations remain outstanding and undischarged, unless Mortgagee otherwise consents in writing, the fee estate of Owner in the Property or any part thereof (including the estate of Mortgagee after exercising the Conversion) will not merge, by operation of law or otherwise, with any other estate in the Property or any part of it, but will always remain separate and distinct, notwithstanding the union of the fee estate and such other estate in Mortgagee or in any other Person.

   **b.**  Owner agrees, to the full extent that it may lawfully do so, that it will not at any time insist upon or plead or in any way take advantage of any appraisement, valuation, stay, marshalling of assets, extension, redemption or moratorium law now or hereafter in force and effect so as to prevent or hinder the enforcement of the provisions of this Performance Mortgage or the Obligations secured hereby, or any agreement between Owner and Mortgagee or any rights or remedies of Mortgagee. To the extent permitted by applicable law, Owner waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Obligations and marshaling in the event of foreclosure of the lien created by this Performance Mortgage, (iii) all rights and remedies which Owner may have or be able to assert by reason of the laws of the State of New Jersey pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Performance Mortgage or to any action brought to enforce any obligation secured by this Performance Mortgage, and (v) any rights, legal or equitable, to require marshaling of assets or to require foreclosure sales in a particular order, including any requirement under applicable law to require

**Book # OR 13580 Page # 5813 Inst. # 5710663**

Mortgagee to resort to assets in a particular order or resort to certain assets before others. To the extent permitted by applicable law, Mortgagee shall have the right to determine the order in which any or all (i) of the Property shall be subjected to the remedies provided by this Performance Mortgage, and (ii) portions of the Obligations are satisfied from the proceeds realized upon the exercise of the remedies provided by this Performance Mortgage.

    c.  Notwithstanding Owner's obligations under Section 21.12 (Indemnification) of the Exchange Agreement, Owner agrees it will pay or reimburse Mortgagee for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Obligations, this Performance Mortgage or the interest created herein, or the Property or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Mortgagee, activities related to protection of Mortgagee's collateral, any foreclosure action, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Owner, and any such amounts paid or incurred by Mortgagee shall be added to the Obligations and shall be secured by this Performance Mortgage. The agreements of this clause shall expressly survive in perpetuity satisfaction of this Performance Mortgage and repayment of the secured Obligations, any release, reconveyance, discharge or foreclosure of this Performance Mortgage, conveyance by deed in lieu of foreclosure and sale of the Property.

    d.  To the extent permitted by law, Owner hereby waives the provisions of any law prohibiting Mortgagee from making an election under any Transaction Document as to the application of proceeds.

    e.  Mortgagee may collect a fee not to exceed the maximum amount permitted by applicable law for furnishing the statement of obligation or other report, disclosure, or statement in connection with or pursuant to this Performance Mortgage or any other Transaction Document.

    f.  In furtherance of Mortgagee's rights under the Exchange Agreement to inspect the Property, Mortgagee may: (i) obtain a court order to enforce Mortgagee's right to enter and inspect the Property in accordance with applicable law (including as to the costs relating thereto), and (ii) have a receiver appointed to enforce Mortgagee's rights to enter and inspect the Property for Hazardous Substances (as defined herein) in accordance with applicable law.

    g.  References in this Performance Mortgage to any statute or statutory provisions (including, without limitation, the UCC or applicable law) shall be deemed to be a reference to such statute or statutory provisions as amended or recodified from time to time.

    h.  Capitalized terms used in this Performance Mortgage shall have the meanings specified herein, or if not defined herein, in the Exchange Agreement. Except as expressly set out in this Performance Mortgage, if there is any conflict between the provisions of this Performance Mortgage and the provisions of the Exchange Agreement, the provisions of the Exchange Agreement shall control. In this Performance Mortgage, references to a Section or a Schedule shall be to a section or schedule of this

Book # OR 13580 Page # 5813 Inst. # 5710663

Performance Mortgage unless otherwise stated.

21.   **Notices.** All notices or other written communications hereunder shall be delivered in accordance with the applicable terms and conditions of the Exchange Agreement. Notices shall be sent to the address of the other party listed below as follows, unless a party has been notified by the other party in writing of a substitute address:

| UNLOCK: | OWNER: |
|---|---|
| Unlock Partnership Solutions AO1 Inc. | Angela Roberts |
| 548 Market St, STE 31036 San Francisco, CA 94104 | 48 Buckeye Lane |
| **Personal or Overnight Delivery** Unlock Partnership Solutions AO1 Inc. 1 Rockefeller Plaza, Suite 1280 New York, NY 10020 | Willingboro, NJ 08046 |
| Fax: 844-916-4006 | |
| **Email:** support@unlock.com | |

22.   **Hazardous Substances.** As used in this Section 22: (a) "**Hazardous Substances**" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law (as defined herein) and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "**Environmental Law**" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "**Environmental Cleanup**" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "**Environmental Condition**" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Owner shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Owner shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Book # OR 13580 Page # 5813 Inst. # 5710663

Owner shall promptly give Mortgagee written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Owner has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Owner learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Owner shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Mortgagee for an Environmental Cleanup.

23.    **Savings Clause.** This Performance Mortgage is subject to the express condition that at no time shall Owner be obliged or required to pay the Settlement Payment if such payment could subject Mortgagee to either civil or criminal liability as a result of being in excess of the Maximum Legal Rate (as defined below). If, by the terms of this Performance Mortgage or the other Transaction Documents, Owner is at any time required or obliged to pay the Settlement Payment due hereunder which was calculated pursuant to the Exchange Agreement using amounts in excess of the Maximum Legal Rate, the Settlement Payment shall be deemed to be immediately reduced to be calculated taking into account Maximum Legal Rate. In this Section 23, "**Maximum Legal Rate**" shall mean the maximum non-usurious rate of return, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received in connection with the Settlement Payment and as provided for in the Transaction Documents, under the laws of such State or States whose laws are held by any court of competent jurisdiction to govern the provisions relating to the Transaction Documents and/or Settlement Payment.

24.    **Reinstatement Pursuant to Applicable Law.** If Owner meets certain conditions, Owner shall have the right to have enforcement of this Performance Mortgage discontinued at any time before the earliest of: (a) any period as applicable law might specify for the termination of Owner's right to reinstate; or (b) entry of a judgment enforcing this Performance Mortgage. Those conditions are that Owner: (i) pays Mortgagee all sums which then would be due under the Transaction Documents as if no acceleration had occurred; (ii) cures any default of any other covenants or agreements; (iii) pays all expenses incurred in enforcing this Performance Mortgage, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Mortgagee's interest in the Property and rights under this Performance Mortgage; and (iv) takes such action as Mortgagee may reasonably require to assure that Mortgagee's interest in the Property and rights under this Performance Mortgage, and Owner's obligation to pay the sums secured by this Performance Mortgage, shall continue unchanged.

25.    **Arbitration.**

a.    In the event of any inconsistencies between the terms and conditions of the Transaction Documents (or any of them) and the terms and conditions of this Section 25, this Section 25 shall control and be binding.

Book # OR 13580 Page # 5813 Inst. # 5710663

        **b.**      SUBJECT TO APPLICABLE LAW, OWNER AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH MORTGAGEE (INCLUDING ANY AFFILIATE, EMPLOYEE, OFFICER, DIRECTOR OF MORTGAGEE IN THEIR CAPACITY AS SUCH OR OTHERWISE) ARISING OUT OF, RELATING TO, OR RESULTING FROM THIS AGREEMENT OR THE PROPERTY, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES OF JAMS, THE RESOLUTION EXPERTS (THE "RULES"). AND BECAUSE THIS AGREEMENT SUBSTANTIALLY AFFECTS INTERSTATE COMMERCE. THE PARTIES AGREE THIS AGREEMENT, INCLUDING ITS ENFORCEMENT, IS TO BE GOVERNED BY THE FEDERAL ARBITRATION ACT. 9 U.S.C. § 1 ET SEQ.

        **c.**      <u>Procedure.</u> OWNER AGREES THAT ANY ARBITRATION WILL BE ADMINISTERED BY JAMS, AND THAT A SINGLE NEUTRAL ARBITRATOR WILL BE SELECTED IN A MANNER CONSISTENT WITH JAMS' COMPREHENSIVE ARBITRATION RULES AND PROCEDURES AND JAMS POLICY ON MINIMUM STANDARDS OF PROCEDURAL FAIRNESS FOR CONSUMER ARBITRATIONS. OWNER HAS ACCEPTED JAMS RULES AND USE OF JAMS. OWNER ALSO AGREES THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES, INCLUDING ATTORNEYS' FEES AND COSTS, AVAILABLE UNDER APPLICABLE LAW. EXCEPT AS OTHERWISE SET FORTH HEREIN. OWNER UNDERSTANDS THAT UNLOCK WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT OWNER SHALL PAY THE FIRST $250.00 OF ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION OWNER INITIATES. OWNER AGREES THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN A MANNER CONSISTENT WITH THE RULES AND THAT TO THE EXTENT THAT THE APPLICABLE JAMS' ARBITRATION RULES CONFLICT WITH THE RULES. THE RULES SHALL TAKE PRECEDENCE. OWNER AGREES THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING AND PROVIDE A CONCISE WRITTEN STATEMENT OF THE ESSENTIAL FINDINGS AND CONCLUSIONS ON WHICH THE AWARD IS BASED. THE ARBITRATION SHALL BE CONDUCTED IN ANY U.S. STATE WHERE THE REAL PROPERTY IS LOCATED.

        **d.**      <u>Remedy.</u> EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT. ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN THE OWNER AND MORTGAGEE. REMEDIES THAT WOULD OTHERWISE BE AVAILABLE TO OWNER UNDER APPLICABLE FEDERAL, STATE OR LOCAL LAWS SHALL REMAIN AVAILABLE. THE ARBITRATOR WILL HAVE NO AUTHORITY TO AWARD PUNITIVE DAMAGES OR CONSEQUENTIAL DAMAGES. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER THE OWNER NOR MORTGAGEE WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

        **e.**      <u>Availability of Injunctive Relief.</u> BOTH PARTIES AGREE THAT ANY PARTY MAY PETITION A COURT FOR INJUNCTIVE RELIEF AS PERMITTED BY THE RULES INCLUDING. BUT NOT LIMITED TO, IF MORTGAGEE ALLEGES OR CLAIMS A BREACH OF

THE AGREEMENT WHERE THE VALUE OF THE PROPERTY OR THE UNLOCK SETTLEMENT PAYMENT IS AT A RISK OF MATERIAL LOSS. BOTH PARTIES UNDERSTAND THAT ANY SUCH BREACH OR THREATENED BREACH OF THE AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION. IN THE EVENT EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS' FEES.

    f.  <u>Small Claims Court</u>. NOTWITHSTANDING THE ARBITRATION AGREEMENT ABOVE. BOTH PARTIES AGREE THAT ANY PARTY MAY SEEK REMEDIES IN SMALL CLAIMS COURT FOR DISPUTES OR CLAIMS WITHIN THE SCOPE OF SUCH COURT'S JURISDICTION PROVIDED THE COURT'S REQUIREMENTS ARE SATISFIED.

    g.  <u>Class Action Waiver</u>. ARBITRATION MUST BE ON AN INDIVIDUAL BASIS. THIS MEANS NEITHER YOU NOR UNLOCK MAY JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER INDIVIDUALS OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS.

    h.  <u>Exchange Agreement</u>. Notwithstanding clause (a) above, if any controversy, claim or dispute with Unlock under or in connection with the Exchange Agreement is subject to arbitration in New Jersey, is otherwise subject to the laws of New Jersey and/or if any provision of Section 20 (*Arbitration*) of the Exchange Agreement is not enforceable under the laws of New Jersey then Section 20 (*Arbitration*) of the Exchange Agreement will be deemed to be replaced by this Section 25.

   26. **Applicable Law.** This Performance Mortgage will be governed by the law of the state in which the Real Property is located.

   27. **Provisions Subject to Applicable Law.** All rights, powers and remedies provided in this Performance Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Performance Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable laws.

   28. **State Specific Provisions.**

    a.  <u>Principles of Construction</u>. In the event of any inconsistencies between the terms and conditions of this Section 28 and the other terms and conditions of this Performance Mortgage, the terms and conditions of this Section 28 shall control and be binding.

    b.  <u>Hazardous Substances</u>.

     (1)  Owner shall not conduct or cause or permit to be conducted on the Property any activity which constitutes an Industrial Establishment (as such term is defined in the New Jersey Industrial Site Recovery Act, as amended ("**ISRA**")) without the prior written consent of Mortgagee. In the

event that the provisions of ISRA become applicable to the Property subsequent to the date hereof, Owner shall take immediate requisite action to insure compliance with ISRA and, in the event such action is required to insure compliance with ISRA, Owner shall give prompt written notice thereof to Mortgagee. Owner shall deliver to Mortgagee copies of all written correspondence, notices and submissions that it sends to or receives from the New Jersey Department of Environmental Protection in connection with such ISRA compliance. Owner's obligation to comply with ISRA shall, notwithstanding its general applicability, also specifically apply to sale, transfer, closure or termination of operations associated with any foreclosure action respecting the Property, including, without limitation, a foreclosure action brought with respect to this Performance Mortgage.

(2)    Owner hereby represents and warrants to Mortgagee that, to the best of Owner's knowledge, the Property is not in violation of, and is exempt from the requirements of, the New Jersey Freshwater Wetlands Protection Act, as amended, N.J.S.A. 13:9B-1 et. seq., or the rules and regulations promulgated thereunder.

c.    Continuing Enforcement of Mortgage. If, after receipt of any payment of all or any part of the obligations under this Performance Mortgage and the other Transaction Documents, Mortgagee is compelled or agrees, for settlement purposes, to surrender such payment to any person for any reason (including, without limitation, a determination that such payment is void or voidable as a preference or fraudulent conveyance, an impermissible setoff, or a diversion of trust funds), then this Performance Mortgage and the other Transaction Documents shall continue in full force and effect, and Owner shall be liable for, and shall indemnify, defend and hold harmless Mortgagee with respect to the full amount so surrendered. The provisions of this section shall survive the cancellation or discharge of this Performance Mortgage and shall remain effective notwithstanding the payment of the obligations, under this Performance Mortgage and the other Transaction Documents, the release of any security interest, lien or encumbrance securing the obligations under his Performance Mortgage and the other Transaction Documents, or any other action which Mortgagee may have taken in reliance upon its receipt of such payment. Any cancellation, release or other such action by Mortgagee shall be deemed to have been conditioned upon any payment of the obligations under this Performance Mortgage and the other Transaction Documents, having become final and irrevocable.

d.    Modification of Security Instrument. This Performance Mortgage may not be supplemented, extended, modified or terminated except by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought. This Performance Mortgage is subject to "modification" as such term is defined in P.L. 1985 c.353 (N.J.S.A. 46:9-8.1 et.seq.) and shall be subject to the priority provisions thereof.

e.    No Credit for Tax Paid. Owner waives any right it may have to a credit against amounts due under the Obligations secured by this Performance pursuant to N.J.S.A. 54:4-33.

f.    Copy of Security Instrument. Owner represents and warrants that it has received a true copy of this Performance Mortgage without charge.

Book # OR 13580 Page # 5813 Inst. # 5710663

ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH UNLOCK, INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, PRINTED MATERIALS, AND DISCLOSURES, ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THIS PERFORMANCE MORTGAGE, THE EXCHANGE AGREEMENT AND TRANSACTION DOCUMENTS, AND THE OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND UNLOCK AS OF THE EFFECTIVE DATE.

IN WITNESS WHEREOF, each undersigned Owner has executed this Performance Mortgage as of the date set forth above.

**OWNER:**

11/13/2021

Name: Angela Roberts

Unofficial Document

## ACKNOWLEDGMENT

STATE OF ___NJ___ )

COUNTY OF ___Burlington___ )

I CERTIFY that on ___Nov 13, 2021___ personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a)    was the maker of the attached instrument; and

(b)    executed this instrument as his or her own act.

_____
Notary Public
My commission expires: April 27, 2025

**PETRA J. PEREZ**
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES APRIL 27, 2025

SCHEDULE A

## LEGAL DESCRIPTION

All that certain tract or parcel of land, situated, lying and being in the Township of Willingboro, County of Burlington, State of New Jersey, more particularly described as follows:

Being Lot 16 in Block 243, as shown on "Subdivision Map, Buckingham Park, Levittown, Section 16," filed in the Burlington County Clerks Office on July 18, 1958 as Map #3424 being more particularly described as follows:

Beginning at a point for a corner on the southerly right of way line of Buckeye Lane (50.00' wide), said beginning point being distant 317.34 feet westwardly from the intersection with the westerly right of way line of Barrington Lane (50.00'wide).

1. South 12 degrees 51 minutes 09 seconds East, along the Filed Plat dividing line between lot 16 and 17, a distance of 100.00 feet to a point for a corner; thence

2. South 77 degrees 08 minutes 51 seconds West, along the Filed Plat diving in between lot 16 and 17, 24 and 25, a distance of 68.48 feet to a point for a corner; thence

3. North 10 degrees 34 minutes 48 seconds West, along the filed Plat dividing in between lot 16, a distance of 100.51 feet to a point for a corner on the curved southerly right of way line of Buckeye Lane; thence

4. In a general eastwardly direction, along same, along a curve, curving to the left, having a radius of 550.00 feet and an arc length of 21.81 feet to a point of tangency in same; thence

5. North 77 degrees 08 minutes 51 seconds East, along the said southerly right of way line of same, a distance of 42.68 feet to the point and place of Beginning.

The above description is in accordance with a survey made by Master Consulting, PA, dated September 3, 2015.

**Parcel ID / APN:** 243 / 16

[End of legal description]

Book # OR 13580 Page # 5813 Inst. # 5710663

## SCHEDULE B

**Notice of certain matters agreed in relation to the Real Property in the Exchange Agreement**

1.  The initial term of the Exchange Agreement shall commence on the date of the Exchange Agreement and shall expire on **November 12, 2031 at 11:59:59PM EST**.

2.  Every person or entity who now or hereafter owns or acquires any right, title or interest in or to any portion of the Real Property is and shall be conclusively deemed to have consented and agreed to every restriction, provision, covenant, right and limitation contained in the Exchange Agreement and this Schedule to the Performance Mortgage ("**Schedule**"), whether or not such person or entity expressly assumes such obligations or whether or not any reference to the Exchange Agreement or this Schedule is contained in the instrument conveying such interest in the Real Property to such person or entity.

3.  The Exchange Agreement covenants are deemed to be covenants running with the land, and include, without limitation, requirements that Owner:

    (a)   not transfer the Real Property without giving prior written notice to Mortgagee and comply with specific sale procedures set forth in the Exchange Agreement;

    (b)   maintain insurance on the Real Property against certain hazards and risks;

    (c)   not increase the amount of debt to third parties secured by liens on the Real Property as specified in the Exchange Agreement;

    (d)   pay all taxes and assessments accruing on the Real Property;

    (e)   occupy the Real Property in accordance with the Exchange Agreement and not use the Real Property for commercial or other non-residential purposes;

    (f)   keep the Real Property free of liens not approved by Mortgagee; and

    (g)   protect and maintain the Real Property and ensure that use of the Real Property complies with all applicable state, federal and local laws and regulations.

4.  The purpose of this Schedule is to give notice of the existence of Mortgagee's rights under the Exchange Agreement. If there is an inconsistency between the terms of this Schedule and the Exchange Agreement, the provisions of the Exchange Agreement shall control.

5.  This Schedule shall remain in full force and effect until released by a written termination or quitclaim deed executed and notarized by Mortgagee and recorded in the real property records for the county where the Real Property is located, or until extinguished by operation of law.

6.  Capitalized terms used in this Schedule shall have the meaning specified in this Schedule (including the Performance Mortgage) or if not defined in this Schedule shall have the meaning specified in the Exchange Agreement.

Book # OR 13580 Page # 5813 Inst. # 5710663