UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA ROBERTS,<br><br>*Plaintiff,*<br><br>-against-<br><br>UNLOCK PARTNERNSHIP SOLUTIONS AOI, INC., CLEAR EDGE TITLE INC., ABC INC 1-10, AND JOHN DOE 1-10,<br><br>*Defendants.* | Case No.: 24-cv-01374-CPO-AMD |

**RESPONSE TO UNLOCK'S NOTICE OF WITHDRAWAL OF MOTION**

EDWARD HANRATTY
LAW OFFICE OF EDWARD HANRATTY
57 W. Main Street
Freehold, NJ 07728
(732) 866-6655
*thanratty@centralnewjerseybankruptcylawyer.com*

THOMAS SCOTT-RAILTON*
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*thomas@guptawessler.com*

*\*admitted pro hac vice*

February 6, 2026                                                *Counsel for Plaintiff*

i

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Procedural background.............................................................................................. 2

Argument ................................................................................................................... 4

    I.     District courts have broad authority to manage their dockets to ensure the efficient resolution of cases and police gamesmanship ....... 4

    II.    Courts do not permit parties to unilaterally withdraw motions or claims while preserving the ability to press the same arguments ................................................................................................. 5

    III.   There is a live case or controversy over TILA's applicability to Unlock's product, which has been fully briefed and argued (twice) ................................................................................................... 9

    IV.   This Court has broad authority to address live legal questions to ensure efficient litigation and police gamesmanship ........................... 12

    V.    An award of costs, expenses, and fees is appropriate. ......................... 15

Conclusion ............................................................................................................... 15

# INTRODUCTION

After twice moving to compel arbitration, after two rounds of briefing and argument, Unlock suddenly tried to withdraw its motion right before this Court was about to rule. Unlock barely tries to explain its actions, but the context makes it abundantly clear: Unlock wanted to prevent this Court from addressing legal issues that have been fully presented (twice) and that remain central to this case.

Nothing requires this Court to reward this manipulation of its docket. Unlock cites no authority granting it an absolute right to withdraw a motion at the eleventh hour just to evade an adverse ruling—squandering judicial resources, needlessly delaying the case, and prejudicing Ms. Roberts. To the contrary, courts have ample authority to manage their dockets and prevent such gamesmanship.

This Court should do so here. While Unlock has waived its request to send this case to arbitration, the core legal issue across Unlock's two motions—the interpretation and application of TILA to Unlock's product—remains fully live. Indeed, Unlock withdrew its motion precisely because the issues underlying it *are* involved in the rest of the case and Unlock wanted to avoid an unfavorable ruling. Unlock has even admitted that it plans to renew its TILA arguments. This Court can thus address these live legal questions that have been fully briefed and presented. Doing so would materially advance this litigation, which has been on hold for well over a year, and avoid rewarding Unlock's tactical ploy.

## PROCEDURAL BACKGROUND

**A.** After removing the case, Unlock first moved to compel arbitration in May 2024. Dkt. 26.[1] From the outset, the key dispute has been whether TILA applies to Unlock's contract. *See, e.g.*, Dkt. 35 at 12–22; Dkt. 47 at 2–12. After Ms. Roberts filed an amended complaint, Unlock renewed its motion to compel and pressed its TILA arguments at even greater length. *See, e.g.*, Dkt. 85-1 at 10–31; Dkt. 96 at 1–10.

Since Unlock first moved, the parties have filed seven main briefs, Dkts. 26-5, 35, 47, 51, 85-1, 93, 96; four supplemental letters or responses, Dkts. 97, 98, 100, 103; and five supplemental briefs regarding TILA's statute of limitations or responding to amicus briefs, which also discussed whether Unlock's product was a residential mortgage loan under TILA, Dkts. 55, 58, 60, 61, 62, 67, 71. This Court held two hearings, the second of which ran for nearly seventy transcript pages. Dkt. 111. Unlock also requested and received a stay of discovery. Dkts. 53, 54.

**B.** After the second hearing, however, things suddenly changed. During the December 4, 2025, hearing, the Court repeatedly expressed significant skepticism of Unlock's interpretation of TILA and its argument that its product was not a residential mortgage loan under TILA. At the end, the Court stated that it would rule before the end of the month. Dkt. 111 at 71. Less than a week later, Unlock filed a

---

[1] Unless otherwise noted, all internal quotation marks, citations, alterations, brackets, and ellipses have been omitted from quotations throughout this brief.

2

document that appeared on the docket as a "MOTION to Withdraw" but was captioned as a "Notice of Withdrawal." Dkt. 106. Without explanation, Unlock purported to withdraw its motion and waive its right to compel arbitration. *Id.*

This Court promptly held a status conference on December 12. The Court noted that it "had spent an exorbitant amount of time on not one, but two motions to compel arbitration including two oral arguments, two rounds of briefing," and then "suddenly, with no explanation, get what's filed as a motion but called a Notice of Withdrawal of the motion, no letter, no cover letter, nothing." Dkt. 126 at 3. When pressed, Unlock's counsel admitted it took this step after the Court had raised "very deliberate, very difficult, very pointed questions during oral argument." *Id.* at 5–6.

The Court observed that "[t]his seems … strategically to be done solely because the Court apparently gave an indication that—and I think I was pretty clear in the pointed questions I asked[—]that it would likely not be a favorable decision." *Id.* at 10. Yet Unlock did "not abandon[ ] [its] argument that TILA doesn't apply"— something that Unlock's counsel expressly confirmed. *Id.* at 13. Thus, "whether or not TILA applies" is "an issue that doesn't go away by [Unlock] withdrawing [its] motion." *Id.* It remains "a live dispute and a live issue": "It certainly is going to frame the issues of discovery," "[i]t is certainly going to target the issues," and it "will be decided at some point in the case." *Id.* at 14. As a result, the Court concluded, "[i]t doesn't seem … to really be made in good faith to be withdrawing the motion at this

3

time," while simultaneously trying to preserve the ability to press the same TILA arguments later. *Id.* The Court then ordered additional briefing on Unlock's purported withdrawal.[2]

**C.** Unlock's brief did not offer any further explanation for why it sought to withdraw its motion. The brief also did not mention TILA, nor did it respond to the Court's observations that TILA remains a live controversy. Instead, it focused on arguing that the Court must "honor" Unlock's unilateral notice of withdrawal and that the issue of "arbitrability" was no longer live. Dkt. 122 at 3–8.

## ARGUMENT

**I.    District courts have broad authority to manage their dockets to ensure the efficient resolution of cases and police gamesmanship.**

The Supreme Court has long recognized "that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "A primary aspect of [a district court's] discretion is the ability to fashion an appropriate

---

[2] On January 15, 2026, the parties requested a settlement conference before Magistrate Judge Donio, but noted that because "settlement discussions are only in the early stages," they did not request any stay or adjournment of deadlines. Dkt. 121.

4

sanction for conduct which abuses the judicial process." *Id.* at 44–45.

Rule 16, which "was drafted to clarify and confirm [a] court's power," provides further confirmation of a district court's power to manage its docket. *Lassiter v. City of Philadelphia*, 716 F.3d 53, 55 (3d Cir. 2013). The rule "contemplates that a trial court should assume an active managerial role in the litigation process to expedite the efficient disposition of a case." *Id.* Rule 16 thus "vest[s] a trial court with wide discretion and power," *id.* at 55–56, including "formulating and simplifying the issues," as well as "facilitating in other ways the just, speedy, and inexpensive disposition of the action," Fed. R. Civ. P. 16(c)(2)(A), (P). And while Rule 16 addresses the pretrial conference, the case management it describes is generally appropriate before trial. *See, e.g., Chavez v. Illinois State Police*, 251 F.3d 612, 654 (7th Cir. 2001).

**II.   Courts do not permit parties to unilaterally withdraw motions or claims while preserving the ability to press the same arguments.**

Litigants don't have an absolute right to unilaterally withdraw motions or claims at any time without any conditions or consequences. Instead, across contexts, courts have imposed consequences on parties attempting unilateral withdrawals to avoid adverse rulings, often by limiting their ability to renew those arguments later.

**A.** The reason for this is straightforward. Parties should not "presume[] that [they] may file a motion with the Court, have it pre-tried, argue it at great length, and then, after sensing that the Court considers it disfavorably, notice a withdrawal of it without procuring nor even seeking either the consent of the parties or leave of

5

court." *In re White Farm Equip. Co.*, 23 B.R. 85, 93 (Bankr. N.D. Ohio 1982), *rev'd on other grounds*, 42 B.R. 1005 (N.D. Ohio 1984), *rev'd on other grounds*, 788 F.2d 1186 (6th Cir. 1986). "Such disorderly practice not only is an affront to the Court but, if sanctioned, would play havoc with motion practice." *Id.* Like amending a motion, withdrawal "is particularly inappropriate after briefs have been interposed by the opposing parties, or oral arguments have been heard." *Robinson v. Worthington*, 544 F. Supp. 956, 963–64 (M.D. Ala. 1982) (quoting 5 Fed. Prac. & Proc. Civ. § 1194 (4th ed.)). It "manipulat[es] the rules of civil procedure and show[s] blatant disregard for the scarcity of judicial resources" when, "after arguing a motion on the merits and sensing an adverse ruling, [a party] attempt[s] to withdraw the motion in order to raise it again later." *Gray v. Degussa Corp.*, 2003 WL 21659450, at *3 (N.D. Ill. 2003).

Even Unlock's sources recognize this. Take *Heldor*. The Third Circuit noted that a court's ability to address a withdrawn issue could depend on whether there was an "objective basis for expecting an imminent decision," particularly "an unfavorable one," that the withdrawing party "sought in some improper way to head off." *State of N.J., Dep't of Env't Prot. & Energy v. Heldor Indus., Inc.*, 989 F.2d 702, 708 (3d Cir. 1993). That's exactly what happened here. Similarly, Unlock (at 3) omits key caveats from a treatise: "Although a party who makes a motion during the course of a trial generally may withdraw it at any time before the court makes an order, *at least where nothing has occurred to prejudice the opposing party by the motion's withdrawal*, in some

6

jurisdictions *or circumstances* leave of court may be required before a motion may be withdrawn."56 Am. Jur. 2d Motions, Rules, and Orders § 31 (emphases added).

**B.** As an initial matter, courts are not powerless simply because a withdrawal is styled as a "notice." *In re White Farm*, 23 B.R. at 93; *see generally Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021) (courts "focus[] on the substance of the filing over its form or label"). Instead, across contexts, courts have imposed consequences on unilateral withdrawals seeking to evade adverse decisions.

In some cases, courts have simply rejected a "purported withdrawal" and decided the issues. *In re White Farm*, 23 B.R. at 93; *see also, e.g., Robinson*, 544 F. Supp. at 965 ("Since withdrawal of the motion will delay the resolution of the case, Plaintiff should not be allowed to withdraw the motion."); *Mannatech, Inc. v. Wellness Quest, LLC*, 2015 WL 11120881, at *3 (N.D. Tex. 2015), *aff'd*, 667 F. App'x 995 (Fed. Cir. 2016) (party was "entitled to an affirmative ruling on the motion regardless of the Stipulation of Withdrawal" which was "an attempt to avoid an affirmative ruling on the motion"); *United States v. Arrendondo-Valenzuela*, 2011 WL 2489745, at *1, n. 2 (D. Kan. 2011) ("It is generally well established that a party cannot 'withdraw' a motion which has already been presented to and considered by the Court in an attempt to circumvent an adverse ruling on the merits." (citing cases)). Unlock cites a few cases where courts have, without analysis, permitted withdrawal, Dkt. 122 at 3–4, but none analyze or address this kind of situation.

Similar concerns arise when plaintiffs seek to voluntarily dismiss their claims *without* prejudice—in other words, retaining the ability to relitigate the same issue. Under Rule 41, courts have discretion to decide whether to allow such a dismissal. They not only look to prejudice to the other side, but "a core inquiry is whether improper gamesmanship is potentially at play"—such as when "the plaintiff was simply seeking a do-over to avoid an adverse ruling" or the "attempt was undertaken solely for tactical reasons." *Kachwalla v. Twp. of Edison*, 348 F.R.D. 215, 217–18 (D.N.J. 2024) (compiling cases); *see also, e.g.*, *Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299 F. App'x 664, 666 (9th Cir. 2008) ("A district court may consider whether the plaintiff is requesting a voluntary dismissal only to avoid a near-certain adverse ruling."); *Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969) (rejecting "attempt[] to deprive the defendant of a ruling on the summary judgment motion by [a] dismissal tactic").

Similarly, in habeas cases, courts prevent litigants from getting a second bite at the apple if they unilaterally withdraw motions after briefing and substantive judicial review in an "attempt to evade the result that was inevitably coming." *In re Moore*, 735 F. App'x 883, 886 (6th Cir. 2018) (compiling cases). Courts still count such petitions towards the limit on "second or successive" petitions. *Id.* at 886–87.

In sum, courts consistently prevent parties from unilaterally withdrawing issues just to avoid adverse rulings while preserving the ability to raise them again.

8

## III. There is a live case or controversy over TILA's applicability to Unlock's product, which has been fully briefed and argued (twice).

That principle applies here. As this Court recognized, the main legal questions the parties briefed on Unlock's motions—how to interpret and apply TILA—remain live. Unlock itself admitted that it will keep pressing its TILA arguments.

**A.** For starters, Unlock doesn't even argue that these TILA questions are truly moot as an Article III matter. Unlock argues that its motion is moot because: "There is no live dispute regarding *arbitrability*" and the "issue of *arbitrability*" is moot. Dkt. 122 at 4–8 (emphases added). But even if Unlock's express waiver of any purported right to compel arbitration resolved the *forum* for this litigation, it did not resolve the fully briefed disputes over TILA questions that remain at the crux of this case.

Unlock never mentions TILA—despite prompting by this Court that the underlying TILA questions remain live. Dkt. 126 at 14. The closest Unlock comes is a vague footnote that acknowledges these issues are not, in fact, truly moot: "Further, any consideration of potential legal or factual issues related to the withdrawn motion to compel would be inappropriate now for the additional reason that those issues have not been fully developed through the discovery." Dkt. 122 at 7 n.3. This seems to concede these issues are still live—in other words, a case or controversy still exists. Instead, Unlock's argument appears to be that unspecified "related' issues are just premature for prudential reasons since unspecified discovery is purportedly needed.

As an initial matter, such "barebones assertions waive rather than raise an

9

argument." *Feshovets v. Att'y Gen. United States*, 666 F. App'x 157, 162 (3d Cir. 2016). That is especially warranted since this Court *already* warned Unlock that it forfeited arguments by raising them in vague footnotes, including unspecified invocations about the need for discovery. Dkt. 111 at 48–51.

**B.** Forfeiture aside, Unlock's argument that there aren't legal issues currently ready for resolution is implausible and inconsistent with its own prior position. Unlock has repeatedly argued that this Court should rule on whether TILA applies as a matter of law under a Rule 12(b)(6) standard. Dkt. 85-1 at 36; Dkt. 111 at 54. Unlock claimed that TILA doesn't apply under "[t]he plain meaning of the term 'residential mortgage loan,' as defined by TILA," Dkt. 96 at 2, and that its contract was "not ambiguous" and "cannot be considered a loan" or "extension of credit" under TILA, Dkt. 85-1 at 19. The parties fully aired these legal questions, through two rounds of briefing and argument. And even after purporting to withdraw its motion, Unlock acknowledged it will keep pressing its TILA arguments. Dkt. 126 at 13. Like other courts, this Court can decide whether Unlock's product is "credit" or "debt" as a matter of law. *See, e.g.*, *Olson v. Unison Agreement Corp.*, 2025 WL 2254522, at *4 (9th Cir. 2025) (holding that similar product was "credit" as matter of law under state law).

Even if there were relevant factual issues, as the Court noted, interpreting TILA now would materially advance the litigation by "fram[ing] the issues [for] discovery." Dkt. 126 at 14. Indeed, Unlock itself argued that if "the standard [for]

10

identifying what is and is not a residential mortgage loan [under TILA] is unclear," it would be hard to determine what kind of "factual discovery" would be relevant. Dkt. 111 at 51. And courts have precluded withdrawals and made "a definitive ruling" to avoid that same party attempting to create "ambiguity" on the issue later. *Hardin v. Se. Pennsylvania Transp. Auth.*, 1998 WL 54713, at *2 n. 3 (E.D. Pa. 1998).

**C.** Even if Unlock were arguing that the Constitution deprives this Court of the power to decide fully briefed, live legal questions, that argument would fail. It's Unlock's "burden" to show mootness, especially when the cause is its own conduct, and it cannot come close. *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). That occurs if "the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* That just isn't true here. The TILA questions are "live," the parties have "a legally cognizable interest" in them, and they are "embedded in an[] actual controversy about [Ms. Roberts's] legal rights." *Id.*

Nor are any of the cases Unlock cites analogous. In *Heldor*, a bankruptcy court ruled on a withdrawn objection to a settlement agreement, violating the general principle against "taking any action in moot cases." 989 F.2d at 704–06. Further, there, withdrawal was not an attempt "in some improper way to head off" an

11

"imminent decision." *Id.* at 708. The Third Circuit later distinguished *Heldor* from a situation where withdrawn objections raised issues that would still "ha[ve] to be resolved" and so "remained live controversies." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 223 (3d Cir. 2004). In another of Unlock's cases, there was no "live case or controversy" because the plaintiff lacked standing—not because a party unilaterally attempted to withdraw an issue to avoid an adverse ruling. *Unalachtigo Band of Nanticoke Lenni Lenape Nation v. Corzine*, 606 F.3d 126, 130 (3d Cir. 2010). And Unlock's final case declined to exert "hypothetical jurisdiction" over "a hypothetical question about whether issues *not* involved (i.e., not pleaded) in th[e] case should be sent to arbitration." *United Gov't Sec. Officers of Am., Int'l Union v. Exelon Nuclear Sec., LLC*, 24 F. Supp. 3d 460, 471-72 (E.D. Pa. 2014) (emphasis added). These cases are nothing like the entirely live TILA issues that remain central to this entirely live case.

**IV.   This Court has broad authority to address live legal questions to ensure efficient litigation and police gamesmanship.**

This Court therefore can and should resolve live legal issues that have been fully briefed and argued. Doing so would meaningfully advance the litigation—which is especially warranted since Unlock's motions to compel arbitration have put this case on hold for well over a year—and it would police gamesmanship. This Court should grant Unlock's motion to the extent Unlock is withdrawing its request to send this case to arbitration, but deny it to the extent that Unlock is attempting to withdraw its request that this Court address fully live and fully submitted legal issues.

12

Doing so would be a proper exercise of this Court's "inherent authority" to "manage [its] docket" and ensure the "efficient and expedient resolution of [the] case[]." *Dietz*, 579 U.S. at 47. It would avoid highly prejudicial delay—preventing Unlock stalling the case for over a year, then using its last-minute withdrawal tactic to stop this Court from creating law of the case so that it can get a do-over. As this Court observed, this would be "a colossal waste of time … when it's all been freshly argued, freshly briefed, and is necessary for the disposition of the claims anyway." Dkt. 126 at 9. And the Court can draw on its "discretion … to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45.

This wouldn't be an advisory opinion—the parties have "a legally cognizable interest" in this issue, which is "embedded in an[] actual controversy about the plaintiffs' particular legal rights." *Already*, 568 U.S. at 91. This approach would be consistent with courts in similar contexts ensuring a party cannot withdraw issues to avoid an adverse ruling while retaining the ability to press them again. *See supra* 7–8.

Courts have the authority to decide live issues, as long as parties have already had a chance to address them. *See, e.g.*, *Anderson v. Loc. 435 Union*, 791 F. App'x 328, 332 (3d Cir. 2019); *Lassiter*, 716 F.3d at 55. Ruling on Unlock's TILA arguments would "formulat[e] and simplify[] the issues," as well as "facilitat[e] … the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2)(A), (P). Courts have "discretion" to manage cases pretrial to "simplify and eliminate [an] issue" when it

would advance the litigation. *In re Roth*, 662 F. App'x 540, 544 (9th Cir. 2016); *see also, e.g.*, 62A Am. Jur. 2d Pretrial Conference § 38. In antitrust cases, for example, courts have used Rule 16 to determine the legal standard that will apply. *See, e.g.*, *N. Jackson Pharmacy, Inc. v. Caremark RX*, 385 F. Supp. 2d 740, 743 (N.D. Ill. 2005). And in complex cases, "a district court may decide to address pivotal threshold issues—such as the viability of certain legal theories—before applying its reasoning to specific claims." *In re Facebook Simulated Casino-Style Games Litig.*, 2024 WL 2287200, at *2 (9th Cir. 2024).

      An additional justification for this approach is that Ms. Roberts's TILA claims are the only federal claims and the basis of this Court's jurisdiction. *See* Dkt. 52 (the Court noting that the loss of the TILA claims would create "uncertainty regarding subject matter jurisdiction"). As such, the Court could address the sufficiency of these claims as part of its "independent obligation" to determine whether it will continue to exercise jurisdiction. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003); *see also In re Diet Drugs Prods. Liab. Litig.*, 2004 WL 2526396, at *1–2 (E.D. Pa. 2004) (resolving jurisdictional argument party tried to withdraw to avoid an adverse ruling).

      This Court should thus treat Unlock's purported "notice" as what it is—a motion to withdraw—and grant it to the extent Unlock is asking to withdraw its request to send this case to arbitration, but deny it to the extent Unlock is trying to withdraw its (twice-made) request for this Court to decide whether TILA applies to its product. *See, e.g., In re White Farm*, 23 B.R. at 93; *Robinson*, 544 F. Supp. at 965.

14

Alternatively, this Court could grant Unlock's motion and address these live, fully briefed legal questions as part of a separate case management order, resolving key issues, providing guidance, and assuring itself of jurisdiction—steps courts take even outside of this kind of gamesmanship. *See supra* 13–14.

## V. An award of costs, expenses, and fees is appropriate.

Finally, it would be appropriate to award the plaintiff the costs, expenses, and fees of having to twice brief and argue a motion Unlock then attempted to withdraw—or at the very minimum for the briefing on Unlock's bad faith withdrawal. "Any attorney … who so multiplies the proceedings … unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S. Code § 1927. This Court also has inherent authority to do so. *See Chambers*, 501 U.S. at 45. And this Court already noted that "it seems to [the Court] at the very least, plaintiff should be entitled to be compensated for all the time that they have spent in opposing [Unlock's] motions." Dkt. 126 at 14. While this Court expressly gave Unlock the chance to "convince me otherwise," *id.*, Unlock did not address this in its brief.

If the Court orders costs, expenses, and fees, Ms. Roberts will submit supplemental briefing as to the amounts.

## CONCLUSION

Unlock's motion to withdraw should be granted in part and denied in part.

15

        Respectfully submitted,

        EDWARD HANRATTY
        LAW OFFICE OF EDWARD HANRATTY
        57 W. Main Street
        Freehold, NJ 07728
        (732) 866-6655
        *thanratty@centralnewjerseybankruptcylawyer.com*

        THOMAS SCOTT RAILTON*
        GUPTA WESSLER LLP
        2001 K Street, NW
        Suite 850 North
        Washington, DC 20006
        (202) 888-1741
        *thomas@guptawessler.com*

        *\* admitted pro hac vice*

February 6, 2026        *Counsel for Plaintiff*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States District Court in the Court of New Jersey by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*s/ Edward Hanratty*
Edward Hanratty